UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSEPH STARLING, *et al.*,

            Plaintiffs,

  v.

WALMART INC,

            Defendant.

Case No. C21-1156-RSM-MLP

REPORT AND RECOMMENDATION

## I. INTRODUCTION

This matter is before the Court on Defendant Walmart Inc.'s ("Walmart") Motion for Summary Judgment ("Defendant's Motion"). (Def.'s Mot. (dkt. # 11).) Plaintiffs Joseph Starling and his two minor children, M.J.S.[1] and M.E.S., (collectively, "Plaintiffs") filed a response (Pls.' Resp. (dkt. # 13)), and Walmart filed a reply (Def.'s Reply (dkt. # 25)).[2] The Court conducted oral argument on September 13, 2022. (Dkt. # 23.) Having reviewed the parties' submissions,

---

[1] Although the Complaint (dkt. # 1-3) identifies Mr. Starling's oldest child as "M.J.A.," Mr. Starling testified that her initials are "M.J.S." (Starling Dep. (Silverman Decl., Ex. B (dkt. # 24)) at 124:13-125:7.)

[2] Plaintiffs filed a document styled as a surreply (Pls.' Surreply (dkt. # 19)), and Walmart then filed one as well (Def.'s Surreply (dkt. # 20)). Both filings violate Local Civil Rule 7(g). Nevertheless, the Court reviewed the filings and has determined that neither is helpful to resolving the issues raised by the instant motion, and thus need not be addressed.

REPORT AND RECOMMENDATION - 1

1  oral argument, the governing law, and the balance of the record, the Court recommends
2  Defendant's Motion (dkt. # 11) be GRANTED in part.

## II.  BACKGROUND

On the evening of March 12, 2018, around 7:15 or 7:20 p.m., Mr. Starling allowed his ten-year-old daughter and six-year-old son to walk together to a Walmart store that is across the street and a "five-minute walk" from their home. (Starling Dep. (Silverman Decl., Ex. B (dkt. # 24)) at 61:20-61:23, 71:7, 78:19.) A Walmart security guard approached the children, asked what they were buying, and then "commanded" them to a follow her to a "back room." [3] (MJS Decl. (dkt. # 15) at ¶ 4; Starling Dep. at 66:11-66:13.) A Walmart employee telephoned Mr. Starling, asked how old his children were, and when he "asked her why are you speaking to my kids[,] she said you need to come get your kids" and hung up. (Starling Dep. at 65:6-65-25, 75:15-75:16.) Mr. Starling's oldest child, M.J.S., then telephoned him, crying, and told him that Walmart employees were "taking us to this back room." (*Id.* at 66:12-66:13.) Mr. Starling arrived at the store five to ten minutes later. (*Id.* at 78:9-78:22, 92:18-92:25.)

Mr. Starling approached Walmart's customer service area, but the representative would not tell him where his children were. (Starling Dep. at 79:3-80:25.) Bystanders informed Mr. Starling that his children were inside the loss prevention office. (*Id.* at 79:20-81:19.) Mr. Starling knocked on the loss prevention office door, saying "I'm here for my kids, where's my kids?" (*Id.* at 87:16-87:18, 88:12-88:13.) Walmart refused to release the children. (*Id.* at 48:23-49:2.) Inside

---

[3] Walmart argues Mr. Starling's and M.J.S.'s declarations should be disregarded as "self-serving and conclusory." (Def.'s Reply at 10.) "A district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015). However, a "conclusory" affidavit, "lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). For purposes of summary judgment, the Court accepts the portions of Mr. Starling's and M.J.S.'s declarations that state facts, not conclusions.

the loss prevention office, M.J.S. heard her father and asked Walmart employees if they could leave, but were told they could not. (MJS Decl. at ¶¶ 6-7.)

M.J.S. and her brother were "terrified." (MJS Decl. at ¶ 8.) M.J.S. "felt and believed we were being treated this way because we were African American." (*Id.* at ¶ 10.) Mr. Starling feels he was treated differently due to being African American because "under normal circumstances . . . if you present yourself as . . . the father or the mother to the children that are being held, then they should be released right away[.]" (Starling Dep. at 41:19-42:10.)

Mr. Starling asked bystanders to call the police, although he did not see if any of them did so. (Starling Dep. at 103:13-104:8.) Police officers arrived approximately 15 minutes after Mr. Starling. (*Id.* at 106:9-106:11.) Mr. Starling heard a police officer telling a Walmart employee "that they were unlawfully holding my children." (*Id.* at 49:10-49:13.) The "police had to force Wal-Mart and its employees to release" Mr. Starling's children to him. (Starling Decl. (dkt. # 14) at ¶ 3.) The children were inside the room for over twenty minutes. (MJS Decl. at ¶ 4.) From the phone call until Mr. Starling's children were returned to him, the incident lasted approximately 40 to 45 minutes. (Starling Dep. at 68:12-69:1.)

Plaintiffs allege causes of action for outrage,[4] false imprisonment, negligence, violation of the Washington Law Against Discrimination (Chapter 49.60 RCW), and defamation. (Compl. (dkt. # 1-3) at ¶¶ 1.1, 4.1-4.4.) Plaintiffs seek "[d]amages and punitive damages." (*Id.* at 7.)

### III.   DISCUSSION

**A.   Summary Judgment Standards**

Summary judgment is appropriate when the "movant shows that there is no genuine

---

[4] Although the parties refer to "outrage" and "intentional infliction of emotional distress" separately (*see* Compl. (dkt. # 1-3) at ¶ 1.1; Def.'s Mot. at 10-11, 20), these are "synonyms for the same tort." *Kloepfel v. Bokor*, 149 Wash.2d 192, 194 n.1 (2003).

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. ("Rule") 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the Court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. It is the nonmoving party's responsibility to "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation and internal quotations omitted). The Court need not "scour the record in search of a genuine issue of triable fact." *Id.*; *see also* Rule 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *see McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

REPORT AND RECOMMENDATION - 4

**B.     Outrage**

Walmart contends Plaintiffs' outrage claims must be dismissed because they have failed to offer evidence of sufficiently outrageous behavior by Walmart and of Plaintiffs' own emotional distress. (Def.'s Mot. at 11; Def.'s Reply at 2.)

"To prevail on a claim for outrage, a plaintiff must prove three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of the plaintiff." *Robel v. Roundup Corp.*, 148 Wash.2d 35, 51 (2002) (quotation marks omitted). "[T]he three elements are fact questions for the jury[.]" *Id*.

*1.     Outrageous Conduct*

The Court must first determine under the first element whether "reasonable minds could differ on whether the conduct was . . . so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Robel*, 148 Wash.2d at 51 (quotation marks and emphasis omitted). In *Robel*, the Washington Supreme Court upheld a trial court's finding of outrageous conduct, holding an employer liable where fellow employees repeatedly mocked the plaintiff and called her "vulgar" names. *Id.* at 51-52.

Plaintiffs argue Walmart's behavior was outrageous because they "strip[ped the children] of their right to free movement" for over twenty minutes and "Mr. Starling had to have the police tell Wal-Mart to release his children to him." (Pls.' Resp. at 7.) Walmart argues its behavior did not rise to the level required for the tort of outrage, citing three cases in support. (Def.'s Mot. at 10.)

First, Walmart cites to *Grimsby v. Samson*, where the Washington Supreme Court noted that "liability in the tort of outrage does not extend to mere insults, indignities, threats,

1    annoyances, petty oppressions, or other trivialities. In this area plaintiffs must necessarily be
2    hardened to a certain degree of rough language, unkindness and lack of consideration." 85
3    Wash.2d 52, 59 (1975)) (citation omitted).

4        Here, Plaintiffs have presented evidence sufficient for a reasonable juror to find conduct
5    beyond rough language or unkindness: the forced separation of a parent from his children
6    without justification or explanation, which did not end until police intervened. M.J.S. stated in a
7    declaration that "Wal-Mart and its employees told my brother and I that we could not leave"
8    even after they heard their father outside the room. (MJS Decl. at ¶ 6.) She "continued to plead
9    and asked Wal-Mart if my brother and I could leave . . . but the answer was the same no." (*Id.* at
10   ¶ 7.) Mr. Starling testified that Walmart did not release his children until after the police told
11   employees "you cannot keep his kids away from him, that's unlawful." (Starling Dep. at 51:14-
12   51:16.) Nothing in *Grimsby* indicates that Walmart's conduct constituted a mere insult or
13   triviality.

14       In the second case Walmart cites, the outrageousness of the behavior was not at issue.
15   *Kloepfel v. Bokor*, 149 Wash.2d 192, 196 (2003). The defendant, who stalked and harassed the
16   plaintiff, only argued that the plaintiff was required to establish resulting physical symptoms, an
17   argument the court rejected. *Id*. *Kloepfel* is inapposite to the instant matter and otherwise fails to
18   rebut that withholding children from their father is outrageous conduct.

19       Finally, Walmart cites *Reid v. Pierce Cty.*, where the Washington Supreme Court held
20   that, while defendants' conduct of showing other people autopsy photographs of plaintiffs' loved
21   ones "is the type that would cause a reasonable person to exclaim, 'outrageous,'" plaintiffs'
22   claims failed because they "were simply not present when the conduct occurred." 136 Wash.2d
23   195, 204 (1998). Here, Plaintiffs were present for the conduct. None of the cases Walmart cites

convince the Court that Walmart's conduct, as a matter of law, falls below the level of outrageous.

Plaintiffs point to *Browning v. Slenderella*, where the plaintiff was not served at a salon because she was African American. *Browning v. Slenderella Sys. of Seattle*, 54 Wash.2d 440, 448-49 (1959), *disapproved of on other grounds by Nord v. Shoreline Sav. Ass'n*, 116 Wash.2d 477 (1991). The Washington Supreme Court had "no difficulty in finding that the conduct of the defendant was 'outrageous,'" meaning conduct "beyond all reasonable bounds of decency." *Id*. And here, unlike the defendant's conduct in *Slenderella*, where plaintiff was free to come and go but was not served, Plaintiffs present evidence that Walmart kept the children in a room and prevented them from leaving. (MJS Decl. at ¶¶ 6-7.)

Walmart argues that "[Mr.] Starling's children were temporarily sheltered by Walmart based on concern for them being in the store alone at six and ten years old[.]"[5] (Def.'s Mot. at 11.) But after Mr. Starling arrived and asked for his children, there was no longer any concern about the children being alone, yet Walmart continued to detain them. (MJS Decl. at ¶¶ 6-7.)

Walmart next argues that the context of the situation must be considered, and that because Mr. Starling "yell[ed]" on the phone and "pound[ed] on the loss prevention door" it was reasonable for Walmart to wait until police arrived before allowing the children to join their father. (Def.'s Mot. at 1.) As evidence, Walmart points to a document identified as a police dispatch log. (Silverman Decl. (dkt. # 12) at ¶ 7, Ex. D (dkt. # 12-3) at 2.) The log indicated that an unnamed reporting party stated he or she had "called dad who got irritated and yelled" at the

---

[5] M.J.S. is variously described as ten (Compl. at ¶ 3.1), eleven (MJS Decl. at ¶ 2), or twelve (Pls.' Resp. at 7) years old at the time of the incident. There is no indication, however, that M.J.S.'s exact age has any bearing on the legal issues in Defendant's Motion.

REPORT AND RECOMMENDATION - 7

reporting party. (*Id.*, Ex. D at 2.) An entry in the log timestamped five minutes later, the source of which is unclear, states, "Male heard yelling in background." (Silverman Decl., Ex. D at 2.)

Mr. Starling testified he did not raise his voice on the phone. (Starling Dep. at 74:11-74:15.) He testified that he was "calm" when he first arrived and asked for his children, and he knocked "normal[ly]" on the loss prevention door. (*Id.* at 88:1, 95:3-95:9.) Only after Walmart refused to release Mr. Starling's children did he raise his voice. (*Id.* at 95:3-95:9.) While a jury may choose which version of facts to believe, at the summary judgment stage, the Court must accept Plaintiffs' testimony as true. Based on Plaintiffs' evidence, a reasonable jury could conclude that Mr. Starling's behavior did not justify Walmart's refusal to release the children to him.

Drawing all reasonable inferences in Plaintiffs' favor, the Court concludes that "reasonable minds could differ" as to whether Walmart's refusal to return the children to Mr. Starling was outrageous conduct. *Robel*, 148 Wash.2d at 51.

2. *Distress*

Walmart also challenges the third element of the tort of outrage, arguing that Plaintiffs must show "more than 'transient and trivial emotional distress' which is 'a part of the price of living among people.'" (Def.'s Mot. at 11 (quoting *Kloepfel*, 149 Wash.2d at 198 (quoting *Restatement (Second) of Torts* § 46 cmt. j.)).) Plaintiffs argue the incident "has affected them emotionally and caused them all mental stress and anguish[,]" pointing to M.J.S.'s testimony that she and her brother were "unable to sleep for several weeks after this incident." (Pls.' Resp. at 4 (quoting MJS Decl. at ¶ 11), 7.)

Washington courts require a lesser showing of emotional distress in outrage claims compared to negligent infliction of emotional distress claims, reflecting a "definite tendency to

REPORT AND RECOMMENDATION - 8

impose greater responsibility upon a defendant whose conduct was intended to do harm[.]" *Kloepfel*, 149 Wash.2d at 200. In contrast to claims for negligent infliction of emotional distress, there is no requirement to show physical manifestations of emotional distress in outrage claims. *See id.* at 198 ("We have never applied the objective symptomatology requirement to intentional infliction of emotional distress."). Direct proof is not always required, because once "extreme and outrageous conduct intended to cause emotional distress [has] been shown, it can be fairly presumed that severe emotional distress was suffered." *Id.* at 201-02; *see also Carmody v. Trianon Co.*, 7 Wash.2d 226, 235 (1941) (Upholding jury award despite lack of direct evidence of mental suffering because "[n]o one could receive a beating, such as was rendered the plaintiff in this case, without suffering insult and humiliation therefrom.").

To determine the minimum threshold showing required for severe emotional distress, it is helpful to look to cases where the threshold was not met. One case where outrageous conduct was found but the emotional distress shown was insufficient to support an award of damages was *Slenderella*. The record failed to support compensatory damages because there was "no finding that the plaintiff suffered any embarrassment, humiliation, mental anguish, or emotional shock." *Slenderella*, 54 Wash. 2d at 450. The court based this holding in part on the fact that "[t]here was no public humiliation; none of the other women in the reception room was aware that there was an act of discrimination." *Id.* at 449. And when a salon representative called the next day to apologize and offer an appointment, "the plaintiff thanked her for calling, but referred her to the plaintiff's attorney. This is more indicative of a desire for punitive action than of severe emotional distress." *Id*.

Here, Plaintiffs' experiences unfolded largely in public, and Plaintiffs have provided evidence of both immediate and lasting emotional distress. M.J.S. described feeling "terrified"

while being held in the loss prevention office. (MJS Decl. at ¶ 8.) Mr. Starling testified that, immediately after leaving the store, he felt "paralyzed" by anxiety and unable to move for a few minutes. (Starling Dep. at 129:17-129:20.) His son had nightmares after the incident. (*Id.* at 131:13.) The children are "scared of Wal-Mart . . . to this day" and his son still has "anxiety . . . when we go to stores" and even now "wouldn't want to keep the door shut in his room." (*Id.* at 130:18-131:23.) The Court concludes reasonable minds could differ as to whether Plaintiffs suffered "more than transient and trivial emotional distress." *Kloepfel*, 149 Wash.2d at 198 (quotation marks omitted).

Plaintiffs have presented sufficient evidence to show genuine issues of material fact as to whether Walmart's conduct was outrageous and whether Plaintiffs suffered severe emotional distress as a result. Accordingly, the Court recommends Defendant's Motion be denied with regard to Plaintiffs' claims of outrage.

### C.     False Imprisonment

Next, Walmart contends Plaintiffs have failed to show evidence of imprisonment and, in any case, its actions were privileged. (Def.'s Mot. at 11-13.)

#### 1.     *Deprivation of Liberty*

Walmart contends Plaintiffs' false imprisonment claims must be dismissed because Mr. Starling testified that "no one from Walmart actually touched his children or said anything to them other than asking them how old they were" and because "there are no allegations that the children tried to leave [but] were prevented from doing so." (Def.'s Mot. at 12.) "A person is restrained or imprisoned when he is deprived of either liberty of movement or freedom to remain in the place of his lawful choice; and such restraint or imprisonment may be accomplished by

physical force alone, or by threat of force, or by conduct reasonably implying that force will be used." *Moore v. Pay'N Save Corp.*, 20 Wash. App. 482, 486 (Wash. Ct. App. 1978).

First, Walmart's strained interpretation of the evidence fails to draw all reasonable inferences in Plaintiffs' favor, as the Court is required to do on summary judgment. M.J.S. stated that, while she and her brother were shopping, "a security guard approached [us] and asked us what we were buying at the store." (MJS Decl. at ¶ 4.) Not satisfied with her answer, the security guard "commanded" the children to follow her to a room. (*Id.*) Walmart employees told the children that they "could not leave" numerous times. (*Id.* at ¶¶ 6-7.) Walmart never gave the children or Mr. Starling any explanation for detaining the children. (*See* Starling Decl. at ¶ 5.) After the incident, when Mr. Starling asked his children "why . . . they approached you guys," the children "said they didn't know. They just asked them how old they were[.]" (Starling Dep. at 128:17-25.) Drawing all reasonable inferences in Plaintiffs' favor, a reasonable juror could conclude Walmart's conduct coerced the children to enter and remain in the loss prevention office.

Second, Plaintiffs need not prove that the children tried to leave and were physically prevented. "If the words and conduct are such as to induce a reasonable apprehension of force and the means of coercion are at hand, a person may be as effectually restrained and deprived of liberty as by prison bars." *Moore*, 20 Wash. App. at 486 (quoting *Kilcup v. McManus*, 64 Wash.2d 771, 777-78 (1964)). "[W]hether a person has a reasonable basis for believing he or she is restrained or imprisoned is generally a question of fact for the jury." *Id.* at 487. Such "questions of fact, turning upon the details of the testimony, as to what was reasonably to be understood and implied from the defendant's conduct, tone of voice and the like, . . . normally are for the jury." *Id.* (quoting W. Prosser, Law of Torts § 11 (4th ed. 1971)).

REPORT AND RECOMMENDATION - 11

This is especially true because the presence of a security guard may itself induce an apprehension of force. "One acting under the apparent authority—or color of authority as it is sometimes described—or ostensibly having and claiming to have the authority and powers of a police officer, acts under promise of force in making an arrest and effecting an imprisonment." *Moore*, 20 Wash. App. at 486 (quoting *Kilcup*, 64 Wash.2d at 777-78).

In *Moore*, the plaintiff, after waiting in a checkout line for several minutes, put down the can of hairspray she had intended to purchase and walked out of the store.

> [A]fter Moore left the store, she was approached by a security guard who identified herself by displaying a badge. The guard asked Moore where the hairspray was, and following Moore's response, "What hairspray?" the security guard flipped open Moore's coat and said, "The hairspray you took out of the store."

*Id.* at 487. "From these facts, [the court] cannot say that as a matter of law Moore's freedom was not restrained." *Id*. The element of force was satisfied because "[t]he security officer was acting under apparent authority, *I. e.*, claiming to have the authority and power of a police officer." *Id*. The court held that the security guard's "request" that plaintiff accompany her back into the store "was implicitly coercive." *Id*. If that was true for an adult who had already left the store, then Plaintiffs here have provided sufficient evidence that a security officer's commands, to a child inside the store or loss prevention office, are implicitly coercive. In *Moore*, the security guard displayed a badge after approaching the plaintiff. Here, M.J.S. indicated she recognized the loss prevention officer as "a security guard" in her declaration. (MJS Decl. at ¶ 4.)

Walmart counters the *Moore* case is distinguishable because the plaintiff there was accused of shoplifting and physically touched. (Def.'s Reply at 5.) The *Moore* court did not rest its decision on either of these facts, however, and Walmart does not explain why they should be dispositive. Plaintiffs' evidence indicates the loss prevention officer was acting under apparent

REPORT AND RECOMMENDATION - 12

authority, which under *Moore* is sufficient to demonstrate the element of force. And in *Moore* the plaintiff was never enclosed inside a room, as the children were here.

Whether Walmart's words and conduct caused the children a reasonable apprehension of force is a matter for the jury. The Court cannot conclude, as a matter of law, that Walmart's conduct did not induce a reasonable apprehension of force.

        2.    *Privilege*

Walmart argues that its actions were privileged by analogy to the "shopkeepers' privilege" and defenses against discrimination claims. (Def.'s Mot. at 12-13.) In Washington, the shopkeepers' privilege is codified in statute:

> In any civil action brought by reason of any person having been detained on or in the immediate vicinity of the premises of a mercantile establishment for the purpose of investigation or questioning as to the ownership of any merchandise, it shall be a defense of such action that the person was detained in a reasonable manner and for not more than a reasonable time to permit such investigation or questioning by a peace officer or by the owner of the mercantile establishment, his or her authorized employee or agent, and that such peace officer, owner, employee, or agent had reasonable grounds to believe that the person so detained was committing or attempting to commit larceny or shoplifting on such premises of such merchandise.

RCW 4.24.220. The plain language of the statute applies only when a defendant "had reasonable grounds to believe" that the plaintiff was "committing or attempting to commit larceny or shoplifting." *Id*.

Yet in this case, Walmart expressly states that "the minor Plaintiffs were not detained to investigate them for shoplifting[.]" (Def.'s Mot. at 13.) Accordingly, RCW 4.24.220 does not apply. *See also Moore*, 20 Wash. App. at 489 ("The record is devoid of any evidence, such as an affidavit of the security guard, which would enable the trial court to determine whether the security guard had reasonable grounds to believe that (Moore) was committing or attempting to commit larceny or shoplifting'" as a matter of law.) (quoting RCW 4.24.220) (alterations in

1  original). Walmart still argues it was "privileged to act as it did," but provides no authority for

2  expanding the statutory privilege beyond the express limits of the statute. (Def.'s Mot. at 13

3  (emphasis omitted).)

4        Washington's Law Against Discrimination ("WLAD"), which prohibits discrimination in

5  "any place of public resort," provides an exception such that "behavior or actions constituting a

6  risk to property or other persons can be grounds for refusal and shall not constitute an unfair

7  practice." RCW 49.60.215. Walmart fails to explain how this statute applies here. Plaintiffs do

8  not allege that the children were refused admission to the store, but rather that they were

9  prevented from leaving the store. There is also no indication that their behavior or actions

10 constituted a risk to property, as Walmart asserts it did not suspect them of shoplifting, or to

11 other persons.

12       Walmart argues that statutes like the two discussed above indicate that "stores, like

13 Walmart, have broader license to arrest the free movement of customer-invitees in the store[.]"

14 (Def.'s Mot. at 13.) But Walmart has provided no authority for the Court to extrapolate any type

15 of immunity beyond what is provided for by statute. Were the Court to rule in Walmart's favor,

16 it would effectively be amending the statutes to broaden the exceptions that the legislature has

17 crafted. *See State v. Arlene's Flowers, Inc.*, 193 Wash.2d 469, 509 (2019) ("When faced with a

18 question of statutory interpretation, we 'must not add words where the legislature has chosen not

19 to include them.'") (quoting *Lake v. Woodcreek Homeowners Ass'n*, 169 Wash.2d 516, 526

20 (2010)).

21       Walmart has not established, as a matter of law, that it had immunity for detaining the

22 children. Accordingly, the Court recommends Defendant's Motion be denied with regard to

23 Plaintiffs' false imprisonment claims.

D.      **Negligence**

"In an action for negligence a plaintiff must prove four basic elements: (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause." *Ranger Ins. Co. v. Pierce County*, 164 Wash.2d 545, 552 (2008). Walmart concedes it owed Plaintiffs a duty of "reasonable, ordinary care" as invitees. (Def.'s Mot. at 17 (citing *Younce v. Ferguson*, 106 Wash.2d 658, 667 (1986) ("An invitee is owed a duty of ordinary care.")).) Walmart contends, however, that Plaintiffs' negligence claims must be dismissed because Walmart did not breach its duty. (Def.'s Mot. at 18.)

Walmart contends that it behaved reasonably, as a matter of law, by "non-forcibly escort[ing the children] to a private room to wait for their father's arrival." (Def.'s Mot. at 18.) On reply, Walmart argues that, based on Mr. Starling's "hostile" behavior, it was reasonable for Walmart employees to "refuse to leave the safety of the loss prevention office [and] to keep the children in the room until police arrived." (Def.'s Reply at 6.) Walmart cites a police record indicating that an unnamed reporting party stated Mr. Starling "yelled" on the phone, and that later Mr. Starling was observed "yelling, pounding on loss prevention door [because he] thinks children [are] in LP office." (Silverman Decl., Ex. D at 1.)

The Court must, however, on summary judgment, draw all reasonable inferences in Plaintiffs' favor. Mr. Starling testified he did not raise his voice on the telephone or speak "in a threatening manner" and that he was "calm" when he first arrived and asked for his children. (Starling Dep. at 74:11-119, 95:3-7.) The Court cannot conclude as a matter of law that Walmart behaved reasonably in detaining the children or refusing to return Mr. Starling's children to him immediately.

Accordingly, the Court recommends Defendant's Motion be denied with regard to Plaintiffs' negligence claims.

### E.   Washington Law Against Discrimination

Walmart contends Plaintiffs' discrimination claims under RCW 49.60 must be dismissed because they have failed to establish a prima facie case of racial discrimination and Walmart had a "legitimate, non-pretextual reason to shelter minors who were alone in the store after dark." (Def.'s Mot. at 13.)

Washington courts have adopted a burden shifting approach; once a plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to "present a legitimate nondiscriminatory explanation for its action." *Arlene's Flowers*, 193 Wash.2d at 524-25. For a prima facie case under the WLAD for discrimination in the public accommodations context, the plaintiff must establish:

> (1) that the plaintiff is a member of a protected class; (2) that the defendant is a place of public accommodation; (3) that the defendant discriminated against the plaintiff, whether directly or indirectly; and (4) that the discrimination occurred 'because of' the plaintiff's status or, in other words, that the protected status was a substantial factor causing the discrimination[.]

*Id.* at 501-02 (citations omitted).

Here, the parties do not dispute the Plaintiffs are members of a protected class and that Walmart is a place of public accommodation; therefore, the first two elements of a prima facie case of discrimination are established. In dispute are elements three and four. The third element is met by showing that "the defendant discriminated against plaintiff by not treating him in a manner comparable to the treatment it provides to persons outside that [protected] class[.]" *Demelash v. Ross Stores, Inc.*, 105 Wash. App. 508, 525 (Wash. Ct. App. 2001).

1    Walmart argues Plaintiffs have failed to provide evidence of "overtly discriminatory
2 comments or actions." (Def.'s Mot. at 16 (citing *White v. Vancouver Neuropsychologists, P.S.*,
3 2005 WL 3500895, at *5 (W.D. Wash. 2005).) However, "plaintiffs may rely on circumstantial,
4 indirect, and inferential evidence to establish discriminatory action." *Mikkelsen v. Pub. Util. Dist.*
5 *No. 1 of Kittitas Cty.*, 189 Wash.2d 516, 526 (2017); *see also Browning v. Slenderella Sys. of*
6 *Seattle*, 54 Wash.2d 440, 444 (1959), *disapproved of on other grounds by Nord v. Shoreline Sav.*
7 *Ass'n*, 116 Wash.2d 477 (1991) ("[O]ne need not be obvious or forthright to effect a
8 discrimination . . . discrimination may arise just as surely through 'subtleties of conduct' as
9 through an openly expressed refusal to serve.").

10    Plaintiffs contend they were treated differently based on race. Mr. Starling testified to
11 knowledge of historical racial discrimination by Walmart by conducting an internet search.
12 (Starling Dep. at 110:8-111:1 ("[I]f you go into historical record on the Internet and in the past
13 and in lawsuits, there is a long history of Wal-Mart discriminating on customers for racially.").)
14 Mr. Starling also testified that he knew a "little white kid" in the neighborhood, who is "eight
15 years old, that goes back and forth to Walmart all day, all night, and never has any problem." [6]
16 (*Id.* at 30:7-9.) M.J.S. stated in a declaration, "I felt and believed we were being treated this way
17 because we were African American." (MJS Decl. at ¶ 10.)

18    Plaintiffs' evidence is insufficient to establish racial discrimination. Plaintiffs fail to
19 explain how Mr. Starling's vague allusion to internet research constitutes personal knowledge or
20 otherwise competent evidence of discrimination. *See* Fed. R. Evid. 602. Even if taken at face
21 value, his testimony does not establish that Walmart treats unaccompanied African American

22

---

23 [6] Walmart claims the white child was "visiting his mother." (Def.'s Reply at 3.) Mr. Starling testified the child's mother "worked" at Walmart but there was no testimony that the child only went to Walmart when his mother was there. (Starling Dep. at 111:9-10.)

REPORT AND RECOMMENDATION - 17

children differently from white or other unaccompanied children. The fact that one white child Mr. Starling knows was not detained does not establish disparate treatment without evidence of systematic differences. Mr. Starling acknowledged that he was not aware of any other incident where young children of color were detained at that store. (Starling Dep. at 117:21-118:3.) And M.J.S.'s declaration provides no facts to support her conclusory statement that the children were treated differently based on race. It is thus "insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d at 1171.

At oral argument, Plaintiffs' counsel argued that when the Starling children have gone to Walmart with the white neighbor child on numerous occasions, they have not been detained. (*See* dkt. # 23.) Counsel's arguments are not evidence, however. *See McSherry v. City of Long Beach*, 584 F.3d 1129, 1138 (9th Cir. 2009) ("Summary judgment requires facts, not simply unsupported denials or rank speculation."); *State v. Lord*, 117 Wash.2d 829, 921 (1991) (Utter, J., in dissent), *abrogated on other grounds by State v. Schierman*, 192 Wash.2d 577 (2018) ("[A]n attorney's argument is not evidence."). Plaintiffs failed to set forth any evidence in the record of the Starling children's experience going to Walmart with the white neighbor child. The Court may not rely on counsel's statements.

Plaintiffs have failed to identify sufficient evidence from which a reasonable juror could conclude they were treated differently on the basis of race. Because Plaintiffs have failed to make a prima facie case, the Court need not address whether Walmart has provided a legitimate non-pretextual reason for its conduct. Accordingly, the Court recommends Defendant's Motion be granted with respect to Plaintiffs' discrimination claims.

### F. Defamation and Punitive Damages

Walmart contends Plaintiffs' defamation claims must be dismissed because they have presented no evidence of any false, defamatory statement. (Def.'s Mot. at 20-21.) Walmart contends Plaintiffs' request for punitive damages must be stricken because Washington prohibits punitive damages unless expressly authorized by statute. (*Id.* at 21.) At oral argument, Plaintiffs conceded that their defamation claims and punitive damages request must be dismissed. (*See* dkt. # 23.) The Court thus recommends that Defendant's Motion be granted with respect to such claims.

### IV. CONCLUSION

For the foregoing reasons, the Court recommends Defendant's Motion (dkt. # 11) be GRANTED in part and Plaintiffs' claims for discrimination, defamation, and punitive damages be dismissed. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 7, 2022**.

Dated this 22nd day of September, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge